## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ROBERT HINMAN and ITALIA FOODS,   )
INC., individually and as the   )
representatives of a class of similarly-   )
situated persons,   )
   )
       Plaintiffs,   )    Case No.: 1:06-cv-01156
   )
     v.   )    Honorable Elaine E. Bucklo
   )
M and M RENTAL CENTER, INC.,   )
   )
       Defendant.   )

## PLAINTIFFS' MEMORANDUM IN SUPPORT
## OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs, Robert Hinman ("Hinman") and Italia Foods, Inc. ("Italia")
(collectively "Plaintiffs"), on behalf of themselves and the settlement class of
similarly-situated persons ("Settlement Class" or "Class"), requests that the Court
enter an order finally approving the parties' Settlement Agreement ("Settlement" or
"Agreement"). The proposed *Final Approval Order and Judgment of Classwide
Settlement* is attached hereto as <u>Exhibit A</u> and will be submitted to the Court in
electronic format under the "proposed order" procedures.

## I.   Preliminary approval and dissemination of notice.

On June 26, 2014, the Court held a hearing to consider Plaintiffs' Motion for
Preliminary Approval of Class Action Settlement Agreement and Notice to the
Settlement Class. After consideration of the Settlement Agreement and plan of
notice, the Court entered an order preliminarily approving the Settlement. (Doc.

252). In accordance with that Order, Plaintiff caused the class notice to be sent to the Class by fax on July 3, 2014. <u>Exhibit B</u>, Declaration of Ross Good. No member of the Class objected to the Settlement or requested to be excluded. <u>Exhibit C</u>, Declaration of Ross M. Good Regarding Response to Class Notice. Also, as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 (b) ("CAFA"), Defendant notified the appropriate state and federal officials of this Settlement Agreement. <u>Exhibit D</u>, Declaration of Daniel J. Cunningham Re Issuance of CAFA Notice. None of those officials objected to any term of the Settlement.

## II.   Background and summary of settlement.

1.      This case has a long history. Plaintiffs filed the case in 2006 alleging that defendant M and M Rental Center, Inc. ("M&M Rental") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), and FCC regulations by sending advertisements to Plaintiffs and a class of similarly-situated persons by fax without their express invitation or permission (the "Class Action"). M&M Rental denied liability

2.      After discovery, the Court certified a class of all persons to whom M&M Rental's faxes were sent and the Seventh Circuit denied leave to appeal. (Doc. 137).

3.      After substantial motion practice, Plaintiffs and M&M Rental entered into a written settlement agreement and filed it for approval. (Doc. 216-2). On October 6, 2009, after notice to the Class, the Court approved the settlement and entered an order entitled "Final Approval of Settlement Agreement and Judgment"

(the "Judgment") (Doc. 225), entering judgment in favor of Plaintiffs and the Class and against M&M Rental in the total amount of $5,817,150.00 for violations of the TCPA, apportioned as follows: (i) 685,350.00 for the faxes sent on or about 6/24/02; (ii) $643,200.00 for the faxes sent on or about 9/15/03; (iii) $626,100.00 for the faxes sent on or about 11/05/03; (iv) $1,972,000.00 for the faxes sent on or about 10/29/04; and (v) $1,890,500.00 for the faxes sent on or about 6/23/2005. Judgment (Doc. 225), ¶ E.

4.      Three insurers had issued policies covering M&M Rental during various years in the relevant time period, Security Insurance Company of Hartford ("Security") from 2000 to 2004, Maxum Indemnity Corporation ("Maxum") from 2004 to 2005, and First Specialty Insurance Company from 2005 to 2006.

5.      As part of the settlement leading to the Judgment, First Specialty paid $100,000 into an IOLTA trust account maintained by Plaintiffs' counsel. Judgment (Doc. 225), ¶ E.

6.      The remaining portion of the Judgment was collectible only from M&M Rental's remaining insurance assets, collectible only from Maxum and Security. *Id.* The Judgment held that, in the event of a recovery from Maxum or Security, "Plaintiff's attorneys shall receive attorneys' fees equal to 33.33% plus costs from any recovery against Defendant's insurer(s)." Id., ¶ H.

7.      Maxum initiated coverage litigation in the United States District Court for the Northern District of Illinois, Case No. 06-cv-4946 (the "Coverage Case"), against M&M Rental and Plaintiffs, contending that Maxum did not owe

any defense or indemnity regarding the Class Action or the Judgment. The court in the Coverage Case ultimately ruled against Maxum and in favor of Plaintiffs and the Class, but Maxum has appealed that judgment to the United States Court of Appeals for the Seventh Circuit.

8.      On appeal, the Parties engaged in mediation through the Seventh Circuit's Settlement Conference Program, assisted in their efforts by Jillisa Brittan, Conference Attorney. Without conceding any issue in the Coverage Case, Maxum agreed to make $2,005,754.57 available to fund this Settlement. Along with the $100,000 previously paid by First Specialty, $2,105,754.58 ("the Settlement Fund") is available now to pay Class members who submit approved claims, to pay fees and out-of-pocket litigation expenses to Plaintiffs' counsel, to pay incentive awards to Plaintiffs, and to pay the costs of notifying the Settlement Class and administering the Settlement.

9.      The Agreement was negotiated among the Parties, through counsel, in good faith and at arms'-length. It will completely resolve the insurance coverage dispute with Maxum and satisfy a portion of the Judgment this Court previously entered!!!Start here, leaving only the portion collectible from Security's policy periods unsatisfied. Plaintiffs' have also filed their Agreed Motion for Preliminary Approval of Class Action Settlement and Notice to the Class (Doc. 254), which seeks approval of another settlement resolving the remainder of the claims at issue but which were not covered by Maxum's policies.

10.     Plaintiffs come to this Court for approval of the proposed settlement

with Maxum because the court retained jurisdiction to decide matters relating to disbursement of funds recovered from M&M Rental's insurer(s). Judgment (Doc. 225), ¶¶E, M.

The key terms of the Agreement are as follows:

(a)     <u>Certification of a Settlement Class</u>. The Parties stipulated to certification pursuant to Rule 23 (b) (3) of a Settlement Class that is a subclass of the one certified in the Judgment, and is defined as follows: "All persons who were sent, without permission, telephone facsimile messages of material advertising the commercial availability of any property, goods or services by or on behalf of Defendant during the period February 1, 2004 through June 23, 2005." Settlement Agreement, ¶2. Excluded from the Settlement Class are Maxum, any parent, subsidiary, affiliate or controlled person of Maxum, as well as Maxum's officers, directors, agents, servants or employees and the immediate family members of such persons, the named counsel in this litigation, any member of their law firm, and the members of the federal judiciary. Preliminary Approval Order, ¶4. On June 26, 2014, this Court entered an order certifying the Settlement Class. (Doc. 252, ¶4).

(b)     <u>Class Counsel and Representative Plaintiffs</u>. Plaintiffs, Robert Hinman and Italia Foods, Inc., were previously appointed as the Class Representatives. (Doc. 137). Phillip A. Bock of Bock & Hatch, LLC, and Brian J. Wanca of Anderson + Wanca, were previously appointed as Class Counsel. *Id.* The Preliminary Approval Order affirmed these appointments.

Preliminary Approval Order, ¶5.

(c) <u>Monetary Relief to the Members of the Settlement Class</u>.

Maxum agreed to make $2,005,754.57 available to settle this case.

Settlement Agreement, ¶4. First Specialty previously paid $100,000.00

toward the Settlement, and that amount has been held in an IOLTA trust

account by Class Counsel. Therefore, the sum total of $2,105,754.57 is

available in this Settlement (the "Settlement Fund"). Pursuant to the terms

of the settlement, each class member who submits a timely and valid claim

form will be sent a check for $533.90. *Id.*, ¶8. If this would result in total

payments exceeding the Settlement Fund, however, the per claim payment

will be calculated on a *pro rata* basis. *Id.* Any portion of the Settlement Fund

that is not paid to claiming class members, to the Settlement Class

Representative, or to Class Counsel, shall revert to and be kept by Maxum.

*Id.*

(d) <u>Class Notice and Claims Administration</u>. The Settlement Class

was notified about the settlement by facsimile on July 3, 2014 as ordered by

the Court. <u>Exhibit B</u>. The notice included instructions about opting out,

objecting, or submitting a claim form by fax or mail to Class Counsel. *Id.*, Ex.

A. To reduce administrative costs, Class Counsel have agreed to perform the

functions of a typical settlement administrator, issuing the notice, receiving

and processing the claim forms, and proposing a list of accepted and rejected

claims. Settlement Agreement, ¶5. After notifying the Settlement Class as

ordered, Class Counsel have received 190 claims for a total of $101,441.00 in claims to be paid to Settlement Class members.

(e)    Settlement Class Opt-Out Rights. Each Settlement Class member was given the opportunity to seek exclusion from the Settlement by opting out of the Settlement Class. No Settlement Class members chose to be excluded. Exhibit B.

(f)    Release. In consideration of the relief provided by the Settlement, the Settlement Class will release all claims that were brought or could have been brought, as defined in the Settlement Agreement, in this action against M&M Rental or Maxum about M&M Rental's faxes sent during the period from February 1, 2004 through June 23, 2005. Settlement Agreement, ¶12.

(g)    Incentive Award and Attorney's Fees and Costs. At the final approval hearing, Class Counsel will ask the Court to approve an award of $15,000.00 from the Settlement Fund to each Plaintiff for serving as the Class Representatives. Settlement Agreement, ¶10. Class Counsel will apply to the Court to approve an award of attorney's fees equal to one third of the Settlement Fund, plus reasonable out-of-pocket expenses of $67,000. *Id.* Maxum has agreed to pay these amounts and does not object to these requests. *Id.*

## III.    The Settlement Class was notified about the settlement.

Rule 23 (e) (1) requires, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Under federal law,

notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005). Here, in compliance with the Court's Orders, Plaintiff sent the notice by fax to the Class members revealed through discovery to have been sent a fax by M&M Rental. Exhibit B.

On June 26, 2014, this Court, upon the recommendation of the settling parties, ordered that the Settlement Class Members receive notice of this Settlement by fax. (Doc. 252, ¶ 8). In this case, notice by fax is the best practicable notice available and is a notice method that is often used in TCPA litigation. *See* Doc. 259, P. 1. Through discovery, Plaintiff was able to obtain unique fax numbers that received faxes during this Settlement period of February 1, 2004 – June 23, 2005. Defendant never produced addresses for these unique fax numbers. On September 15, 2014, Plaintiff submitted information to the Court as to the long, expensive process involved to attempt to obtain the identities when all that is known are the fax numbers. (Doc. 259). Moreover, the lengthy process to obtain the actual identities of the Settlement Class Members will not guarantee a better result. As it is, the success rate of reaching the Settlement Class Members was approximately 73%. Exhibit B. The Federal Judicial Center's guidelines for class action settlements states that "The lynchpin in an objective determination of the

adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%." *See* JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE, found at http://www.fjc.gov/public/pdf.nsf/lookup/notcheck.pdf/$file/notcheck.pdf, and attached as Exhibit E. The notice plan comports with the due process obligations under Rule 23 and is the best method of notice available.

Moreover, the content of the parties' Notice complied with Rule 23 (c) (2) (B), which requires that the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." The class notice stated all of those things. *Id.*, Ex. A.

Further, the Claim form at issue here was an easy to read and understand 1-page form. Id. Each Settlement Class Member merely had to provide their contact information and then verify ownership of the subject fax number during the period of February 1, 2004 – June 23, 2005. Id. The Settlement Class Member did not have to provide copies of the subject fax, or attest to remember receiving the subject fax.

IV. **The Court should approve the settlement.**

    A. **Standard for judicial evaluation and approval.**

A court should approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C). *See Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *DHL v. Thoroughbred Technology + Telecom.*, 309 F.3d 978, 986 (7th Cir. 2002). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

    B. **Factors to be considered in determining whether a settlement is fair, reasonable, and adequate.**

Courts typically consider the following factors in evaluating a class action settlement: (1) the strength of the plaintiff's case on the merits compared to the amount of the settlement; (2) the defendant's ability to pay; (3) the likely complexity, length and expense of further litigation; (4) opposition to the settlement from members of the class; (5) evidence of collusion; (6) opinions of counsel; (7) the stage of the proceedings and the amount of discovery completed at the time of settlement; and (8) the public interest. *Isby v. Bayh*, 75 F. 3d 1191, 1198-1199 (7th Cir. 1996). Here, these factors show the settlement should be approved.

    1. **Strength on the merits compared to the settlement amount.**

Plaintiff and M&M Rental settled and the Court approved and entered judgment, including post-judgment interest, against M&M Rental that is collectible only through the proceeds from its insurance policies. (Doc. 225). A judgment was

entered in Plaintiffs' favor in a coverage action initiated by Maxum, which is currently on appeal. Maxum's insurance policy issued to M&M Rental potentially covers $1,972,000 of the judgment, not including post-judgment interest. Maxum agreed to make available $2,005,754.57, which, combined with the $100,000.00 previously contributed by First Specialty Insurance Company, creates total Settlement Fund of $2,105.754.57. Settlement Agreement, ¶4. This amount covers the entirety of Maxum's potential liability pursuant to the judgment, including post-judgment interest. Every class member had an opportunity to submit a claim by establishing that they owned the fax number during the relevant time period in order to receive $533.90, full statutory damages pursuant to the judgment plus post-judgment interest.

Due to the risks and expenses involved in pursuing the lawsuit to conclusion and the lofty costs of pursing the pending appeal, reaching this settlement is a fair, reasonable, and adequate result for the Class. Therefore, this Settlement is an excellent result when comparing the strength of the case to the settlement amount because it provides the full amount recoverable from Maxum pursuant to the judgment.

### 2. Defendant's ability to pay.

In the context of a class-wide settlement, courts typically consider the defendant's ability to pay. *See Hispanics United of DuPage County v. Addison, Illinois*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997) (Castillo, J.). Here, Defendant's insurer, Maxum, is funding the settlement and $100,000 has already been placed in

Class Counsel's trust account by First Specialty Insurance Company. Therefore, Defendant's ability to pay is not in question.

### 3. The costs of further litigation.

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). There is no exception here. Maxum has demonstrated it will vigorously oppose liability for the judgment pursuant to the insurance policies it issued to M&M Rental, as demonstrated by its pending appeal in the insurance coverage action. Maxum has agreed to avoid the risks and costs of pursuing the appeal by making the full amount of its potential liability pursuant to the judgment, plus post-judgment interest, available to the Class. This Settlement permits the Class to obtain full recovery from the Settlement Fund without the risks and costs of further litigation.

### 4. Opposition.

A low rate of opt-outs or opposition reflect favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high acceptance rate "is strong circumstantial evidence in favor of the settlements"). Here, the class members overwhelmingly support the settlement. This is evidenced by the fact that no class members objected to the settlement. Exhibit C. Additionally, Defendant notified the relevant Attorneys General and the United States Attorney General about the settlement, as required by the Class Action Fairness Act, 28 U.S.C. § 1715, and none of them objected to the settlement. Exhibit

12

D.

### 5. Absence of collusion.

"Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, * 2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.). Here, the settlement record proves that the settlement is not the product of collusion. Settlement was reached only after extensive discovery and litigation, and after mediation through the Settlement Conference Program of the U.S. Court of Appeals for the Seventh Circuit. Therefore, there is no indication that this Settlement was the product of collusion.

### 6. Opinion of counsel.

Plaintiffs and their counsel have concluded that the terms and conditions provided for in this Agreement are fair, reasonable, adequate, and in the best interests of the Class as a means of resolving this litigation. Class Counsel have substantial experience litigating class actions, claims about unsolicited faxes, and about insurance coverage issues. They have been appointed class counsel in dozens of cases. *See, e.g., G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. C 5953, 2009 WL 2581324, *6 (N.D. Ill. Aug. 20, 2009) (Kendall, J.); *Green v. Service Master On Location Services, Corp.*, No. 07 C 4705, 2009 WL 1810769, *4 (N.D. Ill. June 22, 2009) (Hibbler, J.); *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) (Bucklo, J.); *CE Design, Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) (Kennelly, J.); *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) (Gettleman, J.); *G.M. Sign, Inc. v. Group C*

13

*Comm., Inc.*, No. 08-CV-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) (Darrah, J.).

They have also litigated many cases involving insurance issues for class actions. *See, e.g., Valley Forge Ins. Co. v. Swiderski Electronics, Inc.,* 223 Ill.2d 352 (Ill. 2006); *Eclipse Manufacturing Co. v. U.S. Compliance Co.,* 2007 WL 4259439 (Ill. App. Ct. 2007); *Ins. Corp. of Hanover v. Shelborne Assoc.*, 905 N.E.2d 976 (Ill. App. 1st Dist. 2009); *Pekin Ins. Co. v. XData Solutions, Inc.*, No. 1-10-2769, --- N.E.2d. ---, 2011 WL 4578485, 2011 IL App (1st) 102,769 (1st Dist. Sept. 30, 2011); *Terra Nova Ins. Co. v. Fray-Witzer,* 869 N.E.2d 565, 449 Mass. 406 (Mass. 2007); *Owners Ins. Co. v. European Auto Works, Inc..,* Civ. No. 10-2868, --- F. Supp. 2d ---, 2011 WL 3847469 (D. Minn. Aug. 30, 2011).

Under these circumstances, the Court should give weight to Class Counsel's opinions about the settlement.

### 7.     Stage of proceedings and amount of discovery.

The stage of proceedings and amount of discovery supports final approval. Plaintiff was able to identify each of the class members through discovery and identify the circumstances surrounding the subject faxing campaign. As a result, the parties have compiled necessary discovery, and exchanged documents and data sufficient for Plaintiff and its attorneys to evaluate the strength of this case.

### 8.     Public interest.

Courts have held that a settlement of class action litigation serves the public interest. *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980). Based upon the foregoing, as well as upon the judgment of experienced class counsel,

Plaintiff requests that the Court approve the proposed settlement.

## V. Attorneys' fees and costs from the Settlement Fund are fair, reasonable, and appropriate.

Under the terms of the Agreement, Class Counsel will be paid one-third of the Settlement Fund ($701,918.19) as attorneys' fees, plus their reasonable out-of-pocket expenses of $67,000.00, which includes the costs of notice and settlement administration. Settlement Agreement, ¶10. Maxum does not object to Plaintiffs' request for these amounts, nor will Maxum appeal any award of these amounts. *Id.*

### A. The Court should approve Maxum's agreement to pay Class Counsel a percentage of the Settlement Fund as attorney's fees.

The Settlement provides that Class Counsel will be paid from the Settlement Fund. "This method of recovering attorneys' fees is known as the 'common-fund' doctrine, and holds that class counsel who wins a settlement or judgment creating a commonly-held fund for the benefit of the class is entitled to a reasonable fee drawn from that fund." *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 814 (E.D. WI 2009) (Stadtmueller, J.) (*citing Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d 560, 563 (7th Cir.1994)). The Court already approved this method of attorney compensation as part of the initial Judgment.

The Seventh Circuit "has held in a number of cases that when common funds are involved, the district court determines a reasonable fee to be paid out of the common fund, and in doing so, considers the value the marketplace would have assigned to the case at the outset." *Goodell v. Charter Communications, LLC*, No. 08-cv-512-bbc, 2010 WL 3259349 at *1 (W.D. WI. Aug. 17, 2010) (Crabb, J.)

15

(discussing cases). *See Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) ("In deciding fee levels in common fund cases, we have consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'"), *citing In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir.2001); *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (market for legal services paid on a contingency basis shows the proper percentage to apply in a class action that creates a common fund for the benefit of the class). Here, the prior judgment specified that fees were to be 1/3 of the recovered fund. As discussed below, that figure is consistent for the market rate in this type of case—especially where the attorneys needed to prosecute not one action, but two (the underlying case and the coverage case).

Courts awarding fees in common-fund cases must attempt to award the market price for legal services "in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Taubenfeld v. AON Corp.,* 415 F.3d 597, 598 (7th Cir. 2005) (quoting *In re Synthroid Marketing Litig.,* 264 F.3d 712 (7th Cir.2001)); *McKinnie*, 678 F. Supp. 2d at 814. An appropriate fee is one that "re-creates" the market for the provided legal services. *McKinnie*, 678 F. Supp. 2d at 814-15 (*citing Montgomery v. Aetna Plywood, Inc.,* 231 F.3d 399, 408 (7th Cir. 2000) (stating that "the measure of what is reasonable is what an attorney would receive from a paying client in a similar case."). In *McKinnie*:

> The court accept[ed] counsel's suggestion that the case would be handled on a class action contingency fee basis in the private market.

16

The class members have little motivation to retain counsel on an hourly basis because they are not guaranteed to prevail on their claims and the individual damages suffered were nominal. A contingency fee arrangement is appropriate in such a case because it insulates the plaintiffs from any economic risk if their litigation is ultimately unsuccessful. Therefore, the market rate for the legal services provided by class counsel is a contingency fee. *See Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir.1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'"). The court will award attorneys' fees as a percentage of the common fund because it most closely replicates the market for the legal services provided. [678 F. Supp. 2d at 815.]

Like *McKinnie*, this case was handled on a contingency fee basis.

**B.     Attorneys' fees are based upon the entire fund available to be claimed, even if a portion of the fund is not claimed.**

In *Boeing Co. v. Van Gemert,* 444 U.S. 472, 480 (1980), the Supreme Court

stated that the right of absentee class members "to share the harvest of the lawsuit

upon proof of their identity, whether or not they exercise it, is a benefit in the fund

created by the efforts of the class representatives and their counsel." "[T]he criteria

are satisfied when each member of a certified class has an undisputed and

mathematically ascertainable claim to part of a lump–sum judgment recovered on

his behalf." *Boeing*, 444 U.S. at 479.

The fee award is based upon the entire fund available to be claimed, even if a

portion of the fund is not claimed by class members and the unclaimed remainder

reverts to the defendant. *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d

423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created

through the efforts of counsel at the instigation of the entire class. An allocation of

fees by percentage should therefore be awarded on the basis of the total funds made

17

available, whether claimed or not."); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar."); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar."); *McKinnie*, 678 F. Supp. 2d at 815 ("An award of attorneys' fees is appropriately based upon the total common fund and not on the amount claimed against it. The $2.1 million settlement amount was available to the entire class, regardless of the fact that a small number of class members actually filed claims. Therefore, an award of attorneys' fees should be calculated based upon the full benefit.") (citing *Boeing*). *See also* 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14:6, p. 570 (4th ed. 2002) (stating that *Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed).

Here, as in *Boeing*, the Class members were sent a Class Notice with an attached claim form that would enable them "to share the harvest of the lawsuit upon proof of their identity." By identifying themselves and stating that they

owned/held the fax number in question during the class period (the dates when Defendant's advertisements were sent), they would receive $$533.90 from the Settlement Fund for each advertising fax they were sent. Therefore, the parties agreed to, and the Court should approve, attorney's fees based upon the entire common fund of $2,105,754.57.

### C. The requested fees are within the market rate for this type of case.

The market for legal services paid on a contingency basis shows the proper percentage to apply in a class action that creates a common fund for the benefit of the class. *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). Where lawyers working on a contingency basis in the relevant community typically charge one-third of any recovery to a private client, this shows that a similar fee is appropriate in a contingency class action. *Id.*; *see also Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) (approving award of fees equal to 30% of $7.25 million settlement plus $111,054.06 in expenses and citing with approval a submission showing thirteen cases in the Northern District with awards of 30-39% of common funds in class actions); *Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) (awarding 38% of the fund as fees). *See also* Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 13:80 (4th ed. Updated June 2008); *First Interstate Bank of Nevada, N.A. v. National Republic Bank of Chicago,* No. 80 C 6401 (N.D. Ill. Feb. 12, 1988) (Plunkett, J.) (39% fee); *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. Sept. 30, 1996) (Williams, J.), *aff'd,* 160 F.3d 361 (7th Cir. 1998) (receivership case) (38% fee); *In re Nuveen Fund Lit.*, No. 94 C 360 (N.D. Ill. June 3, 1997) (Manning, J.) (33.3% fee); *In re Soybean Futures Lit.*, No. 89 C 7009 (N.D. Ill. Nov.

27, 1996) (Norgle, J.) (33.3% fee); *Liebhard v. Square D Co.*, No. 91 C 1103 (N.D. Ill. Jun. 6, 1993) (Plunkett, J.) (33.3% fee); *Goldsmith v. Technology Solutions, Co.*, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) (Guzman, J.) (33.3% fee); *Hammond v. Hendrickson*, No. 85 C 9829 (N.D. Ill. Nov. 20, 1992) (Aspen, J.) (33.3% fee); *In re Caremark International Sec. Lit.*, No. 94 C 4751 (N.D. Ill. Dec. 15, 1997) (Plunkett, J.) (33% fee); *Saf-T-Gard International, Inc. v. Seiko Corp. of America*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Doc. 100) (33% fee).

"When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill*, 160 F.3d at 363 (7th Cir. 1998) (affirming award of 38% of $20 million), and citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

Moreover, the agreed percentage falls within the market for cases involving claims about unsolicited faxes and TCPA claims. *See, e.g., Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-cv-7995 (N.D. Ill. March 4, 2014) (St. Eve, J.) (awarding fees equal to one-third of the total settlement fund); *Radha Geismann, M.D., P.C. v. Allscripts-Misys Healthcare Solutions, Inc.*, Case No. 09-cv-5114 (N.D. Ill. February 16, 2012) (Kim, J.) (awarding fees equal to 30% of the total settlement fund); *Paldo Sign and Display Co. v. Topsail Sportswear, Inc.*, Case No. 08-cv-5959 (N.D. Ill. December 21, 2011) (same); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, Case No. 09-cv-1399 (N.D. Ill. May 26, 2011) (Coleman, J.) (awarding fees equal to one-third of the total settlement fund). *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 08 C 5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Doc. 146) (awarding

fees equal to one-third of the total settlement fund); *Saf-T-Gard International, Inc. v. Seiko Corp. of America*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Doc. 100) (awarding fees and expenses equal to thirty-three percent of the total settlement fund); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 09 C 1399 (N.D. Ill. May 26, 2011) (Coleman, J.) (Doc. 140) (awarding fees equal to one-third of total settlement fund plus additional $42,640.44 in expenses); *Holtzman v. CCH*, 07 C 7033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Doc. 33) (awarding fees equal to one-third of the total settlement fund); *CE Design, Ltd. v. Exterior Systems, Inc.*, 07 C 66 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Doc. 32-2) (awarding fees equal to one-third of the total settlement fund); *Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, Case No. 10-cv-331 (E.D. Wis. July 19, 2013) (awarding fees equal to 35% of the total settlement fund); *Eclipse v. U.S. Compliance*, No. 03 CH 922 (Lake County, IL, Dec. 23, 2008) (awarding 33.33% plus expenses); *G.M. Signs, Inc. v. BackHauLine*, 07 CH 758 (Lake County, IL, Dec. 10, 2009) (awarding 33.33% plus expenses); *Tabass v. Castle Screen Print Corp.*, No. 04 L 1394 (DuPage County, IL, Dec. 10, 2008) (awarding 33.33% plus expenses); *BNS, Limited v. Redondo Family Chiropractic, Inc.*, No. 09-2-19352-5 SEA (King County, WA, Nov. 30, 2010) (awarding 33.33%); *All American Painting, LLC v. Dean Weich, Inc.*, No. 09SL-CC05352 (St. Louis County, MO, June 10, 2011) (awarding one-third of total settlement fund plus expenses). *See also Accounting Outsourcing, LLC. v Verizon Wireless,* 2007 U.S. Dist. LEXIS 97153 (M.D. La. 2007) (awarding $2,314,328, or more than 35% of the common fund, plus costs); *Community*

*Vocational Schools v. Turner Educational Products, LLC*, No. 0800853-31-1 (Bucks County, PA, Aug. 4, 2010) (fees of 37.96% of fund).

Finally, other courts have appointed Plaintiffs' counsel to pursue collection of class-wide judgments on the basis of a one-third contingency fee, as this Court did in the Judgment. *CE Design Ltd. v. Cy's Crab House North, Inc., et al.*, No. 07 C 5456 (Kennelly, J.) (Doc. 424) (approving fees equal to one-third from potential, future recovery from insurer); *Locklear Electric, Inc. v. Norma L. Lay*, 09 C 0531 (S.D. Ill. Sept. 8, 2010) (Reagan, J.) (Doc. 67) (same); *Hinman v. M&M Rentals, Inc.*, 06 C 1156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Doc. 225) (same); and *CE Design Ltd. v. King Supply Company*, No. 09 C 2057 (Schenkier, J.) (Doc. 178) (same).

Here, Class Counsel have spent a great deal of time litigating this case and as much time litigating the insurance coverage case, and will continue to serve as the Settlement Administrator. Settlement Agreement, ¶5. As noted above, Class Counsel are experienced TCPA litigators and have also litigated insurance coverage cases regarding TCPA claims many times.

## VI.    Incentive payment to Plaintiff is appropriate.

If the Settlement is approved, Plaintiffs will each recover $15,000.00 from the Settlement Fund for serving as the Class Representatives. Settlement Agreement, ¶10. Courts routinely award such "incentive payments" to the persons who assume the special litigation burden of class representative and thereby benefit the entire class. *See Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award to class representative because "a named plaintiff is an essential

ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representatives).

Here, the parties agreed an award similar to that awarded in other TCPA cases. *See CE Design, Ltd. v. Exterior Systems, Inc.*, 07 C 66 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Doc. 32-2) (approving $9,500 incentive award in TCPA settlement); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 07 C 5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Doc. 146) (approving $9,500 incentive award in TCPA settlement); *Saf-T-Guard International, Inc. v. Seiko Corp. of America*, 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Doc. 100) (approving $12,000 incentive award to class representative in TCPA settlement); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 09 C 1399 (N.D. Ill. May 26, 2011) (Coleman, J.) (Doc. 140) (approving $9,500 incentive award in TCPA settlement). While the award sought—and agreed to— here is double what was requested in the initial settlement in 2008, the increase reflects the representatives' diligent service in continuing to pursue the coverage action against both insurers. As noted, Maxum has agreed to pay the requested awards and there has been no objection from class members or the Attorneys General.

Class action suits conserve judicial and litigant resources. *GMAC Mtge. Corp. v. Stapleton*, 236 Ill. App. 3d 486, 497, *citing* C. Krislov, Scrutiny of the Bounty:

Incentive Awards for Plaintiff in Class Litigation, 78 Ill. B.J. 286 (June 1990). Class representatives assume the burdens of litigation that absent class members do not shoulder and do so without promise of a reward and with the risk that the litigation may not succeed. The Class Representatives in this case are no exception. But for Plaintiffs' initiative and participation, the benefits available to all Class members would not have been realized. The Court should approve the parties' agreement regarding Plaintiffs' incentive payments, and award the requested amounts.

## VII.    Conclusion.

The Court should approve the Settlement as fair, reasonable, and adequate and in the best interests of the settling parties and the Class. The parties' proposed order is submitted with this brief as Exhibit A.

Respectfully submitted,

ROBERT HINMAN and ITALIA FOODS, INC.,        individually and as the representatives of a class of similarly-situated persons,

/s James M. Smith
One of Plaintiffs' Attorneys

Brian J. Wanca
David Oppenheim
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500

Phillip A. Bock
Tod A. Lewis
James M. Smith
BOCK & HATCH, LLC.
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500